UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

Linda M. Seniecle,

Debtor.

Case No. 06-34763
Chapter 7

Appearances:

James F. Selbach, Esq.
Selbach Law Firm, PLLC
Attorneys for Linda M. Seniecle
5858 East Molloy Road, Suite 180
Syracuse, NY 13211

Bernard D'Orazio, Esq.
Law Offices of Bernard D'Orazio, PC
Attorneys for BPD Bank
100 Lafayette Street, Suite 601
New York, NY 10013

Hon. Margaret Cangilos-Ruiz, U.S. Bankruptcy Judge

MEMORANDUM-DECISION AND ORDER

Before the court is a motion filed by Linda M. Seniecle ("Debtor") alleging that BPD Bank willfully violated the automatic stay imposed by section 362(a) of the United States Bankruptcy Code.[1] The motion seeks sanctions in the form of actual damages including attorneys' fees and costs as well as punitive damages.[2] BPD Bank denies that it willfully violated the stay and that Debtor suffered actual damages. Debtor moved for summary judgment on the issue of willfulness but the court directed an evidentiary hearing on the factual background regarding the alleged violation that was held on November 16, 2007. This memorandum-decision incorporates the court's findings of fact and conclusions of law as

---

[1] 11 U.S.C. §§ 101–1532 (2009) ("Code").
[2] At the close of the evidentiary hearing on this matter, Debtor amended her motion to include a request for punitive damages.

1

permitted by Fed. R. Bankr. P. 7052, made applicable by Fed. R. Bankr. P. 9014. For the following reasons, Debtor's motion for a finding of a willful violation of the stay is granted and sanctions are imposed.

The parties filed a joint stipulation of facts ("Stipulation"), which is incorporated in this court's findings. Debtor filed a chapter 13 petition on December 27, 2006, and listed BPD Bank on Schedule F of her petition as an unsecured creditor to whom money was owed. BPD Bank's headquarters are located at 90 Broad Street, New York, NY. On December 29, 2006, the Bankruptcy Noticing Center mailed Form B9I giving notice of the commencement of a chapter 13 case ("Commencement Notice") to BPD Bank, 90 Broad Street, 6th Floor, New York, NY 10004. The Commencement Notice includes the following language:

> In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Common examples of prohibited actions include contacting the debtor by telephone, mail or otherwise to demand repayment; taking actions to collect money or obtain property from the debtor; repossessing the debtor's property; starting or continuing lawsuits or foreclosures; and garnishing or deducting from the debtor's wages.

BPD Bank does not dispute that it received the Commencement Notice of Debtor's chapter 13 case. After the filing of Debtor's case, BPD Bank mailed nine notices to Debtor and contacted her by telephone to collect on the debt owed.[3] On May 1, 2007, BPD Bank filed a proof of claim in the amount of $12,580.07.[4] On May 3, 2007, Debtor filed the instant motion against BPD Bank alleging a willful violation of the automatic stay. Prior to filing the motion, Debtor did not complain or otherwise notify BPD Bank that she was receiving notices from BPD Bank. On December 12, 2007, Debtor voluntarily converted her case to chapter 7.

---

[3] The nine notices were received in evidence as Debtor's Composite Exhibit A.
[4] The proof of claim filed by BPD Bank was received in evidence as Creditor's Exhibit 1.

At the evidentiary hearing, the court heard testimony from Debtor and Vincent P. Crocitto, Senior Vice President of BPD Bank ("Mr. Crocitto"). Debtor testified that after the filing of her bankruptcy petition an employee of BPD Bank telephoned her to ask about her monthly payments. When Debtor replied that she had filed bankruptcy and that BPD Bank would need to speak to her attorney, the employee responded that Debtor should have called sooner and that BPD Bank could have helped her. Debtor further testified that the receipt of the telephone call and nine notices disturbed and upset her emotionally because they were the only such creditor harassment that she received after filing and she had expected such harassment to cease once she filed for bankruptcy. Mr. Crocitto testified that the Collection Division of BPD Bank places telephone calls to delinquent customers, as distinct from the Operations Division, which automatically mails reminder notices when payments are not received. Mr. Crocitto testified that the Collection Division keeps a ledger for each customer account with notations of any telephone calls to the customer and the substance of any conversation between the customer and a Collection Division employee.[5] Mr. Crocitto further testified that the ledger for Debtor's account ("Ledger") indicates that a Collection Division employee spoke with Debtor by telephone on January 8, 2007, and that notations were made on that date indicating that Debtor had filed for bankruptcy and that BPD Bank should contact her bankruptcy attorney.

Code section 362(a) imposes an automatic stay of, *inter alia*, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). A willful violation of the stay is "any deliberate act taken in violation of a stay, which the violator knows to be in existence." *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir. 1990). Knowledge of the stay and actions in violation of its requirements are sufficient for a violation to be willful—there need be no proof of a specific intent to violate

---

[5] An excerpt of the ledger kept for Debtor's account was received in evidence as Creditor's Exhibit 2.

the stay. *In re Adomah*, 340 B.R. 453, 460 (Bankr. S.D.N.Y. 2006) (*citing Crysen*, 902 F.2d 1098; *Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999); *In re Lansdale Family Rests., Inc.*, 977 F.2d 826, 829 (3d Cir. 1992)).

It is undisputed that the claim against Debtor arose before the commencement of the case, as the proof of claim filed by BPD Bank states that the debt was incurred on July 13, 2005, (Creditor's Ex. 1) and Debtor filed her chapter 13 petition on December 27, 2006. (Stipulation ¶ 1.) As noted above, BPD Bank received the Commencement Notice, although there is no record of the exact date of its receipt. Nevertheless, Mr. Crocitto admitted on cross-examination that Debtor informed BPD Bank on January 8, 2007, that she had filed for bankruptcy. Therefore, BPD Bank had knowledge of the automatic stay at least as of January 8, 2007.

It is also undisputed that BPD Bank mailed Debtor nine notices after the commencement of the case (Stipulation ¶ 7), which Mr. Crocitto testified were automatically generated by BPD Bank's computer system. Mr. Crocitto further testified that although BPD Bank's computer system is generally flagged to cease generating automatic notices to a customer when BPD Bank receives a Commencement Notice, this was not done in Debtor's case. The first notice was dated February 13, 2007, and notices continued to be sent up until April 25, 2007. (Debtor's Composite Ex. A.) Seven of the notices contain a request for payment ("[o]ur records indicate your installment payment has not been received. If you have not already made a payment, please do so today") and the remaining two notices also contain a request for payment ("we would like to inform you that said loan is past due"). (Id.) These nine notices sent after BPD Bank learned of Debtor's bankruptcy filing constitute acts to collect a claim against Debtor that arose before the commencement of the case. Accordingly, the court finds that BPD Bank willfully violated the automatic stay imposed by Code section 362(a).

Code section 362(k) provides that an individual injured by a willful violation of the automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). Actual damages for emotional distress may be granted "where other corroborating evidence is presented or the circumstances of the stay violation are so egregious that they obviously merit emotional distress damages." *In re Pole*, 2008 Bankr. LEXIS 1800, *4 (Bankr. N.D.N.Y. 2008) (*citing In re Ficarra*, Case No. 00-62714, slip op. at 14 (Bankr. N.D.N.Y. April 17, 2000)). Emotional distress must be more than "fleeting, inconsequential and medically insignificant," but even without corroborating medical evidence, "emotional distress can be reasonably presumed where the stay violation is sufficiently offensive . . . . [S]uch a presumption is justified when, for example, the debtor is physically threatened, the violative act constitutes an invasive and personal attack, or a tangible and substantially adverse action results from the stay violation." *In re Turner*, 2006 Bankr. LEXIS 4211, *18–19 (Bankr. N.D.N.Y. 2006) (*quoting Aiello v. Providian Fin. Corp.*, 257 B.R. 245, 250–51 (N.D. Ill. 2000), *aff'd*, 239 F.3d 876, 881 (7th Cir. 2001)).

Debtor offered no medical evidence to support her claim of emotional distress caused by the violation of the stay. On cross examination, Debtor admitted that she was already upset about many other aspects of her life prior to filing for bankruptcy, including her financial difficulties, several lawsuits in which she was involved, and calls she received from BPD Bank and other creditors, and that she had been close to a nervous breakdown near or during the time of filing. Debtor did not testify that she had been physically threatened or that she had suffered any substantially adverse action as a result of the violation of the automatic stay and this court does not find that the notices and telephone call constitute an invasive and personal attack on

Debtor. Accordingly, the court concludes that Debtor has not suffered compensable harm in the form of emotional distress.

Attorneys' fees are also a component of actual damages and may be awarded even if the debtor has suffered no other compensable harm. *In re Sullivan*, 367 B.R. 54, 66 (Bankr. N.D.N.Y. 2007). However, when a debtor's sole damages from a violation of the stay are attorneys' fees, the court should review those fees carefully to avoid the appearance that the court is rewarding an excessively litigious approach to such violations. *See Salem v. Paroli*, 260 B.R. 246, 257 (S.D.N.Y. 2001) (*citing In re Hill*, 22 B.R. 119, 124 (Bankr. N.D. Ohio 1998)). Based on this court's ruling that BPD Bank willfully violated the automatic stay, the court finds that Debtor is entitled to reasonable attorneys' fees.

Debtor has filed time records in support of a request for attorneys' fees in the amount of $12,410.00. BPD Bank objected to the filing of the time records prior to a decision by this court on the merits and reserved its right to contest any attorneys' fees claimed. Upon review of the request for fees, the court concludes that Debtor is entitled to the $12,410.00 in attorneys' fees.[6] If BPD Bank chooses to object to the award of attorneys' fees, said objection must be filed and served so as to be made returnable not later than May 28, 2009.

Punitive damages for a willful violation of the automatic stay are warranted where there is an actual finding of maliciousness or bad faith on the part of the offending creditor. *Crysen*, 902 F.2d at 1105. An award of punitive damages is intended to punish the offending creditor and to deter the creditor and other creditors from similar conduct in the future. *See Turner*, 2006 Bankr. LEXIS 4211 at *21 (*citing In re Klein*, 226 B.R. 542, 547 (Bankr. D.N.J. 1998)).

---

[6] This amount is in addition to the $350.00 previously awarded by this court in an order compelling BPD Bank to respond to Debtor's discovery request entered on November 1, 2007.

On cross-examination, Mr. Crocitto admitted that when a customer informs BPD Bank that he or she has filed for bankruptcy, that fact alone does not cause the Operations Division to cease mailing notices to the customer. He admitted that on January 8, 2007, Debtor informed BPD Bank that she had filed a chapter 13 case and that the Operations Division of BPD Bank nonetheless thereafter sent her nine notices beginning in February 2007. Mr. Crocitto further admitted that there are no procedures or policies in place to require employees of the Collections Division to verify whether a bankruptcy petition had been filed and that BPD Bank had not changed its procedure as of the date of the evidentiary hearing on November 16, 2007. On re-direct, Mr. Crocitto testified that BPD Bank does not investigate and research a customer's claim that he or she filed for bankruptcy but, rather, because of the volume of accounts and numerous people who claim to have filed bankruptcy, BPD Bank's past and current policy is to desist only when legal notice from the court is received. Obviously, since the legal notice was sent and admittedly received, that did not seem to deter the Bank's actions either.

The court concludes that BPD Bank's continuing stated policy of disregarding actual verbal notification from debtors of a bankruptcy filing without first at least combing its own files to ascertain the receipt of a Commencement Notice, combined with the absence of any procedure to verify such notice, constitutes "bad faith" so as to warrant an award of punitive damages in this case. In order to deter BPD Bank as well as other creditors from engaging in similar conduct in the future, the court imposes punitive damages in the amount of $3,500.00, which BPD Bank is directed to pay to Debtor within ten days from the date of this order.

    So ordered.

Dated: April 20, 2009
       Syracuse, New York

                                           Hon. Margaret Cangilos-Ruiz
                                           U.S. Bankruptcy Judge